Steven Morris, Esq. (SBN: 126193)
Jonathan M. Deer, Esq. (SBN: 164837)
Peyman Cohan, Esq. (SBN: 206367)
morris@quantumlawgroup.com
deer@quantumlawgroup.com
pcohan@quantumlawgroup.com
**Quantum Law Group, LLP**
8383 Wilshire Blvd., Ste. 935
Beverly Hills, CA 90211
(323) 955-2600 (Telephone)

Benjamin Blakeman, Esq. (SBN 60596)
ben@lifeinsurance-law.com
**Life Insurance Law Group**
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
(213) 629-9922

Attorneys for Plaintiff Sarita Kacker

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARITA KACKER, an individual<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN NATIONAL CORPORATION *dba* LINCOLN FINANCIAL GROUP, an Indiana corporation; THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, an Indiana corporation,<br><br>Defendants. | Case No. 2:22-cv-00322-DMG (ASx)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **Breach of Contract**<br>2. **Negligence**<br>3. **Breach of Duty of Good Faith and Fair Dealing**<br>4. **Financial Elder Abuse**<br>5. **Violation of California's Unfair Competition Law (Restitution and Injunctive Relief)**<br><br>**DEMAND FOR JURY TRIAL** |

1
FIRST AMENDED COMPLAINT

Plaintiff SARITA KACKER sues defendants and alleges:

1. This complaint concerns an outrageous and completely unjustified cost of insurance increase on a life insurance policy, one of a large number of such policies purchased by Defendant Lincoln National Life Insurance Company in (or about) 2006 from Jefferson Pilot Life Insurance Company. On information and belief, the actual cost of insurance on these policies in 2016 had not increased but had actually declined significantly. As a result of this increase in premium, Plaintiff's insured's premium became completely unaffordable, and the policy was terminated, causing Plaintiff to suffer substantial damages.

2. PARTIES

3. Plaintiff Sarita Kacker is an individual who resides in Los Angeles County, California. Sarita Kacker was over the age of sixty-five at all relevant times during which the acts complained of herein were committed.

4. Plaintiff Sarita Kacker is also applying for letters of administration to act as the personal representative of the Estate of Ashok K. Kacker, deceased, and will amend this complaint to appear in her capacity as personal representative once she receives the letters of administration.

5. Defendant LINCOLN NATIONAL CORPORATION *dba* LINCOLN FINANCIAL GROUP ("**LNC**") is an Indiana corporation that maintains offices in Los Angeles, California, including offices it operates as a number of subsidiaries that sell life insurance throughout the United States including within the State of California, Los Angeles County.

6. Defendant THE LINCOLN NATIONAL LIFE INSURANCE COMPANY ("**LNLIC**") is an Indiana corporation in the business of selling life insurance and operates and sells life insurance policies in Los Angeles County, California. On information and belief, LNLIC is a subsidiary of LNC.

///

///

## JURISDICTION AND VENUE

7. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is an individual who resides in the State of California, County of Ventura. Defendant is an Indiana corporation with its principal place of business in Indiana. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

8. Venue in the Central District of California is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claims asserted herein are based in or occurred in this District and the subject contract was executed in the District.

## FACTS COMMON TO ALL CAUSES OF ACTION

9. Plaintiff Sarita Kacker is the widow of Ashok K. Kacker and the Administrator of his estate. Prior to his death, she was his spouse at all times material to this complaint. She was the primary beneficiary of the life insurance policy at issue herein. Ashok K. Kacker was a medical doctor and was over the age of sixty-five and a California resident at all relevant times during which the acts complained of were committed.

10. In 2002, a predecessor of LNC and LNLIC known as Jefferson Pilot Life Insurance Company issued a life insurance policy in the original principal sum of $930,000 on the life of Dr. Kacker. The policy was a "Legend 300 Universal Life" insurance policy (the "**JPL Policy**"). Dr. Kacker was the record owner of that policy. However, under California community property law, Plaintiff was a co-owner of the JPL Policy.

11. Universal life policies are sold as vehicles to accumulate cash value during the life of the insured. Such policies combine aspects of term life insurance (life insurance policies that pay a benefit in the event of the death of the insured during a specified term) with an interest-bearing account into which premium payments are made. Premium payments over and above the "Cost of Insurance" and

certain other expenses accumulate in the value account that earns interest. However, as the Cost of Insurance increases, the insured may be required to pay higher premiums to keep the policy in force.

12. On information and belief, the original scheduled annual premium of the JPL policy was $20,000 and was always paid as required.

13. Sometime in 2006 or 2007, Jefferson Pilot Life Insurance Company merged with Lincoln Financial Group (a name used by LNL to cover all of its insurance businesses), and LNLIC became the insurer of the JPL Policy. There were no changes to the coverage amount or terms of the contract.

14. On information and belief, at some point thereafter, Defendants raised the planned annual premium to $28,756 and Dr. Kacker paid the premium as required.

15. Under the language of the JPL Policy, the monthly deduction amount for cost of insurance was governed by the following language:

> Cost of Insurance Rates
>
> The monthly cost of insurance rates are determined by us. Rates will be based on our expectation of future mortality, interest, expenses, and lapses. Any change in the monthly cost of insurance rates used will be on a uniform basis for Insureds of the same rate class. Rates will never be larger than the maximum rates shown on page 11. The maximum rates are based on the mortality table shown on page 4.

16. On information and belief, at some point around 2013, Dr. Kacker requested a withdrawal of some of the cash value of the JPL policy, which resulted in the principal amount of the policy being reduced to $749,454, and also reduced the amount of the premium required to keep the policy in force.

17. On March 27, 2013, Defendants generated and provided Dr. Kacker with an in-force illustration for the JPL Policy which projected a premium of $32,477 to carry the policy through the insured's age 97, based on the reduced death benefit

and "Non-Guaranteed Assumed Values at 4%", the minimum interest rate in the contract.

18. On information and belief, around August and September of 2016, Defendants instituted a broad policy of increasing premiums of their insureds under Universal Life policies based upon purported cost of insurance increases using pre-textual reasons which relied upon factors that are not permitted by the policies. The cost of insurance increases ranged from roughly 50% to 95% – far beyond what the enumerated policy factors permit. The increases were not uniform among policyholders.

19. On September 6, 2016, Defendants sent the insured a letter it described as an "IMPORTANT NOTIFICATION", stating that effective on October 9, 2016, the cost of insurance ("**COI**") rates would increase. The explanation given was as follows:

> Beginning 10/09/2016 your policy's Cost of lnsurance (COI) rates will Increase.
> We are operating in a challenging and changing environment as we continue to face nearly a decade of persistently low interest rates. including recent historic lows and volatile financial markets. Prudent management of our business and monitoring of the external environment have been crucial to Lincoln's 110-year track record of helping people secure their financial futures. and remains so today. This includes making fair and responsible adjustments as necessary and appropriate to ensure we are providing value to our customers while operating responsibly for the long-term.

20. The letter suggested that Dr. Kacker request an in-force illustration to understand how the increased charges would affect the performance of his policy.

21. On September 14, 2016, a new in-force illustration was generated by Lincoln and provided to Dr. Kacker which called for an annual premium of $48,179

to carry the policy through age 95 based on then-current assumptions. That premium was nearly 50% higher than the premium he was then paying. On information and belief, Dr. Kacker was shocked and dismayed at the prospect of having to pay so much more for his life insurance and felt that he had to take drastic action to protect his family.

22.   At approximately the same time as he received the notice of increased cost of insurance, Dr. Kacker was diagnosed with pancreatic cancer.  As a medical doctor, he understood that the cancer was in all probability fatal (it has a 10% survival rate), and he did not have many more years to live.

23.   A Statement of Account dated December 9, 2016, indicated that the monthly deduction for COI went from $1,024.90 in October 2016 to $1,870.49 in November 2016, an increase of 82%.  Defendants increased the COI although mortality rates had decreased for decades.

24.   On information and belief, the increase in COI was not authorized by the language of the policy and, in fact, the COI should have been adjusted downward over time and not increased.

25.   At the end of 2016, the cash surrender value of the JPL Policy was approximately $70,000.

26.   At that point, Dr. Kacker was 75 years old and was seriously ill, but he was in no position to pay the substantially increased premium.

27.   On information and belief, in addition to increasing Dr. Kacker's cost of insurance without justification, Defendants also failed to properly explain to Dr. Kacker what his other options were with respect to the policy or how he might keep the policy in force through the end of his life.

28.   On information and belief, Dr. Kacker sought to borrow against the policy in order to continue to pay the improperly increased premium so that Plaintiff would have the benefit of the life insurance upon his death.  He was also afraid that if he did not pay the newly projected premium in the 2016 In Force Illustration, the

policy would lapse without value. On information and belief, he submitted paperwork by mistake which was interpreted as a request to surrender of the policy by Defendants. On information and belief, Dr. Kacker did not intend to surrender the JPL Policy. Nevertheless, the policy was terminated.

29. The only reason Dr. Kacker believed he had to take the action that resulted in its termination was because of the improper 82% increase in the COI, which resulted in a substantially higher premium to keep the policy in force than was justified by the policy contract.

30. Despite multiple requests to Defendants, they have refused to explain the basis for the 82% increase in the COI or provide any information to Mrs. Kacker about the policy.

31. Dr. Kacker's JPL Policy terminated in January, 2017. Dr. Kacker believed that the JPL Policy was still in force and continued to assure Plaintiff that she was covered by his life insurance.

32. Dr. Kacker died on May 12, 2019.

33. Plaintiff thereafter contacted LNC to file a claim, but she was informed that the policy had lapsed. She attempted by herself through a complaint with the Department of Insurance and through her attorney to obtain information about the COI increase but was refused that information on the stated grounds that she was not the policyowner, despite the fact that she was a co-owner of the JPL Policy under California's Community Property Law.

**FIRST CAUSE OF ACTION**

(For Breach of Contract Against All Defendants)

34. Paragraphs 1 through 33 are incorporated into this cause of action as though set forth expressly herein.

35. Defendants breached of the terms of the JPL Policy by improperly raising the COI by 82% when mortality rates had decrease for decades. There was no justification for increasing the COI by 82% and doing so constituted a breach of the

terms of the policy.

36. As a direct and proximate result of the breach, Dr. Kacker was unable to pay the full premiums. He therefore undertook to preserve the policy through loans, but mistakenly submitted paperwork which resulted in the termination of the policy.

37. Plaintiff has standing to sue as the direct beneficiary under the JPL Policy and as the sole beneficiary of the estate of Dr. Kacker.

38. Dr. Kacker died on May 12, 2019.

39. As a direct and proximate result of the Defendants' breaches, Plaintiff in her individual capacity suffered damages of the loss of the death benefit she should have received if Lincoln had not breached the terms of the policy, and she and Dr. Kacker lost the value of the insurance policy at the time it was cancelled in an amount estimated to be at least $749,000 plus interest thereon from the date of Dr. Kacker's death, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

(For Negligence Against All Defendants)

40. All previous paragraphs of the complaint are incorporated into this cause of action as though set forth expressly herein.

41. Defendants owed Plaintiff a duty to properly administer the JPL Policy, including re-evaluating the cost of insurance (COI) in a proper manner and making proper adjustments, including decreases, to the COI pursuant to the terms of the JPL Policy and properly informing their insured (Dr. Kacker) of the status of the policy and the options available to him to maintain it in force.

42. Defendants breached that duty by improperly calculating the COI and improperly advising Dr. Kacker regarding his options available to maintain the policy in force.

43. As a direct, proximate and foreseeable result of Defendant's negligence, Dr. Kacker was caused to believe he could no longer afford his JPL

Policy, and therefore submitted paperwork based on that belief which resulted in the unintentional termination of the JPL Policy and the loss of the value therefore, which would not have occurred but for Defendants' negligence.

44. As a direct and proximate result of Defendants' negligence, Plaintiff has been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

(Breach of Duty of Good Faith and Fair Dealing — Bad Faith Against All Defendants)

45. All previous paragraphs of the complaint are incorporated into this cause of action as though set forth expressly herein.

46. Defendants' pattern of conduct in unreasonably increasing the Cost of Insurance (COI) by 82% without proper cause, failing to explain to the insured his options to maintain the policy in force after the improper increase, thereafter, terminating the policy, and refusing to explain to Plaintiff the reasons for the COI increase, constitutes bad faith as unreasonable conduct without proper cause. On information and belief, this pattern of conduct was intended to cause Dr. Kacker, and Plaintiff (the beneficiary under the policy), to lose the benefit of the policy.

47. As a direct and proximate result of the complained of conduct, Plaintiff was damaged in an amount of at least $749,000 plus interest thereon or such other amount as may be proven at trial.

48. Plaintiff was also caused to hire and pay for attorneys to represent her as a direct, proximate and foreseeable result of Defendants' bad faith, and necessarily incurred fees and costs; they are entitled to reimbursement for such fees and costs.

49. Defendants' conduct was malicious, fraudulent and oppressive, in that Defendants knew they were taking advantage of an aging insured and intended their conduct to deprive the insured and its beneficiary of their property. Plaintiff is therefor entitled to exemplary and punitive damages under Civil Code §3294.

//

**FOURTH CAUSE OF ACTION**

(Against all Defendants for Financial Elder Abuse)

50. All previous paragraphs of the complaint are incorporated into this cause of action as though set forth expressly herein.

51. At all times material hereto, both Plaintiff and Dr. Kacker were more than 65 years of age.

52. By unlawfully increasing Cost of Insurance on the policy by 82%, Defendants knew or should have known that their unlawful conduct would harm Plaintiff in that Dr. Kacker was likely to lose valuable life insurance benefits which Defendants would not have to pay. On information and belief, Defendants have a pattern of intentionally increasing cost of insurance to unlawful and unreasonable levels as insureds age in order to cause the policies to terminate so Defendants do not have to pay out on the policies.

53. Each Defendant either directly took action to deprive Mr. Kacker and Plaintiff of valuable property, i.e., the value of the life insurance including life insurance benefits or assisted or aided in taking the property.

54. As a direct and proximate result of the complained of conduct, Plaintiff was harmed by the loss of Dr. Kacker's life insurance and by suffering great mental distress.

55. As a further direct result of Defendants' actions, Plaintiff was forced to and did hire attorneys to represent her, and incurred attorney's fees and costs, for which she is entitled to be reimbursed, under California's Financial Elder Abuse Law.

56. Defendants' conduct was done with malice, oppression or fraud in that Defendants knew it would cause harm to Mr. Kacker and Plaintiff, both elders, and intended it to do so. Wherefore, Plaintiff is entitled to an award of punitive or exemplary damages pursuant to California Civil Code §3294.

///

**FIFTH CAUSE OF ACTION**

(Against All Defendants for Violation of California's Unfair Competition Law ("UCL")

California Business and Professions Code § 17200, et seq.)

57. All previous paragraphs of the complaint are incorporated into this cause of action as though set forth expressly herein.

58. The UCL (Cal. Bus. Prof. Code § 17200 et seq.) defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

59. The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices — but only that such practices occurred.

60. Defendants' business practices as described herein constitute unlawful business practices and acts in that they have unlawfully, unfairly, and unreasonably increased the cost of insurance, failed to explain to the insured his options with regard to the policy, and thereafter terminated the policy, and did these acts with the intent to avoid having to pay out on the life insurance policy. Defendants' conduct constitutes deceptive and unfair business practices.

61. As a direct, proximate and foreseeable result of Defendants' wrongful conduct, Plaintiff and Dr. Kacker lost valuable property, to wit, the value of the life insurance policies. Plaintiff is entitled to restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that Defendants may have obtained as a result of their unfair business practices.

62. Defendants' acts as hereinabove alleged are acts of unfair competition within the meaning of the Business and Professions Code Section 17200 et seq. Plaintiff is informed and believes that Defendants will continue their wrongful business practices unless enjoined therefrom.

63. Plaintiff has incurred and during the pendency of this action will

continue to incur expenses for attorney's fees and costs herein.  Such attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit the public.

64. **WHEREFORE,** Plaintiff prays for relief as follows:

65. Compensatory damages;

66. Punitive damages;

67. Restitution;

68. Injunctive relief preventing Defendants from unreasonably increasing insurance premiums on their insureds, including elderly insureds;

69. Attorney's fees;

70. Interest;

71. Costs of suit; and

72. Such other and further relief as the Court may deem just and proper.

Dated:  March 10, 2022                **QUANTUM LAW GROUP, LLP**

*/s/ Jonathan M. Deer*
By: _____
Jonathan M. Deer
Attorneys for Plaintiff


**LIFE INSURANCE LAW GROUP**

*/s/ Benjamin Blakeman*
By _____
Benjamin Blakeman, Esq.
Attorney for Plaintiff

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury on all causes of action and claims so triable.

                                  **QUANTUM LAW GROUP, LLP**

                                          */s/ Jonathan M. Deer*
By: _____
        Jonathan M. Deer
        Attorneys for Plaintiff